# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-0749V
### (not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

JOHN HEATH *and* MARIE LOUISE    \*
HEATH, *on behalf of their minor son,*    \*
J.N.H.,    \*
     \*
           Petitioners,    \*
     \*
   v.    \*
     \*
SECRETARY OF HEALTH    \*
AND HUMAN SERVICES,    \*
     \*
           Respondent.    \*
     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Chief Special Master Corcoran

Filed:  February 19, 2020

Ruling on Entitlement; Tetanus, Diphtheria-acellular-pertussis (Tdap) Vaccine; Autoimmune Encephalitis; *Althen* Prong One; *Loving* Prong Four.

*Michael Avrim Firestone*, Marvin Firestone, MD, JD and Associates, San Mateo, CA for Petitioners.

*Heather Lynn Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION DENYING ENTITLEMENT[1]

On May 21, 2019, John and Marie Louise Heath filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program") on behalf of their minor son, J.N.H.[2] Petitioners alleged that the Tdap vaccine J.N.H. received June 1, 2016 caused him to suffer from neurological injuries, including autoimmune encephalitis and/or a significant aggravation of a preexisting autoimmune encephalitis. Pet. at 1.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

## I.      Factual Background

J.N.H. was thirteen years old when he received the Tdap booster on June 1, 2016. Pet. at 2–3. He had a past medical history that was significant for autism spectrum disorder, anxiety, attention deficit disorder, and obsessive compulsive disorder. *Id.* Despite these problems, J.N.H. was excelling in school and extracurricular activities prior to his vaccination in June 2016. *Id.* at 2. Immediately following receipt of the Tdap vaccine, J.N.H. complained of soreness in his arm where the shot had been injected. *Id.* 5–6. Later that night, J.N.H. developed a fever, and by the next day he was complaining of nausea and a headache. *Id.* at 6.

Thereafter, Petitioners noticed a dramatic worsening of J.N.H.'s condition. His obsessive compulsive hand washing became more frequent and caused dermatologic injury, he experienced fatigue, flu like symptoms, headaches, nausea, memory problems, delusions, speech problems, severe anxiety attacks, sound sensory, catatonia symptoms, depression, frequent urination, and his reading and writing skills deteriorated. Pet. at 6–8. Since the onset of these symptoms, J.N.H. has had multiple inpatient psychiatric hospitalizations and emergency room visits. *See* Ex. 6 at 814–22 (J.N.H.'s medical timeline). While being treated for his symptoms, physicians also sought an etiology for J.N.H.'s condition, and they eventually diagnosed him with Pediatric Autoimmune Neuropsychiatric Disorders Associated with Streptococcal Infections ("PANDAS")/ Pediatric Acute-onset Neuropsychiatric Syndrome ("PANS") after learning that J.N.H. had experienced a streptococcal infection in May 2016—one month prior to his vaccination and the onset of his symptoms. *Id.* at 815; Ex. 4 at 8.

## II.     Procedural Background

After filing a Petition and supporting medical records, a status conference with the parties was held on September 19, 2019, during which I highlighted the problems with Petitioners' claim. I explained that the claim strongly resembled numerous other autism claims in the Program, and was therefore unlikely to succeed on the merits. Thus, I instructed Petitioners to brief the issues discussed during the status conference in a motion seeking a ruling on the record, and they have done so. Mot. for Ruling on the Record, filed Jan.10, 2020 (ECF No. 16). Respondent filed his Response on February 12, 2020. Response, filed Feb. 12, 2020 (ECF No. 19).

## III.    Applicable Legal Standards

### A.  *Petitioner's Overall Burden in Vaccine Program Cases*

To receive compensation in the Vaccine Program, a petitioner must prove either: (1) that he suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table— corresponding to one of the vaccinations in question within a statutorily prescribed period of time or, in the alternative, (2) that his illnesses were actually caused by a vaccine (a "Non-Table

Injury"). *See* Sections 13(a)(1)(A), 11(c)(1), and 14(a), as amended by 42 C.F.R. § 100.3; § 11(c)(1)(C)(ii)(I); *see also Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006).[3] In this case, Petitioner does not assert a Table claim.

For both Table and Non-Table claims, Vaccine Program petitioners bear a "preponderance of the evidence" burden of proof. Section 13(1)(a). That is, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly*, 592 F.3d at 1322 n.2; *see also Snowbank Enter. v. United States*, 6 Cl. Ct. 476, 486 (1984) (mere conjecture or speculation is insufficient under a preponderance standard). Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). In particular, a petitioner must demonstrate that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly*, 592 F.3d at 1321 (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). A petitioner may not receive a Vaccine Program award based solely on his assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. Section 13(a)(1).

In attempting to establish entitlement to a Vaccine Program award of compensation for a Non-Table claim, a petitioner must satisfy all three of the elements established by the Federal Circuit in *Althen*: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278.

Each of the *Althen* prongs requires a different showing. Under *Althen* prong one, petitioners must provide a "reputable medical theory," demonstrating that the vaccine received *can cause* the type of injury alleged. *Pafford*, 451 F.3d at 1355–56 (citations omitted). To satisfy this prong, a petitioner's theory must be based on a "sound and reliable medical or scientific explanation." *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994). Such a theory must only be "legally probable, not medically or scientifically certain." *Id.* at 549.

Petitioners may satisfy the first *Althen* prong without resort to medical literature, epidemiological studies, demonstration of a specific mechanism, or a generally accepted medical

---

[3] Decisions of special masters (some of which I reference in this ruling) constitute persuasive but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit rulings concerning legal issues are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd* 104 F. App'x 712 (Fed. Cir. 2004); *see also Spooner v. Sec'y of Health & Human Servs.*, No. 13-159V, 2014 WL 504728, at *7 n.12 (Fed. Cl. Spec. Mstr. Jan. 16, 2014).

theory. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1378–79 (Fed. Cir. 2009) (citing *Capizzano*, 440 F.3d at 1325–26). Special masters, despite their expertise, are not empowered by statute to conclusively resolve what are essentially thorny scientific and medical questions, and thus scientific evidence offered to establish *Althen* prong one is viewed "not through the lens of the laboratorian, but instead from the vantage point of the Vaccine Act's preponderant evidence standard." *Id.* at 1380. Accordingly, special masters must take care not to increase the burden placed on petitioners in offering a scientific theory linking vaccine to injury. *Contreras*, 121 Fed. Cl. at 245 ("[p]lausibility . . . in many cases *may* be enough to satisfy *Althen* prong one" (emphasis in original)). But this does not negate or reduce a petitioner's ultimate burden to establish his overall entitlement to damages by preponderant evidence. *W.C.*, 704 F.3d at 1356.[4]

In discussing the evidentiary standard applicable to the first *Althen* prong, many decisions of the Court of Federal Claims and Federal Circuit have emphasized that petitioners need only establish a causation theory's biological plausibility (and thus need not do so with preponderant proof). *Tarsell v. United States,* 133 Fed. Cl. 782, 792–93 (2017) (special master committed legal error by requiring petitioner to establish first *Althen* prong by preponderance; that standard applied only to second prong and petitioner's overall burden); *Contreras,* 121 Fed. Cl. at 245 ("Plausibility . . . in many cases *may* be enough to satisfy *Althen* prong one." (emphasis in original)); *see also Andreu*, 569 F.3d at 1375. At the same time, there is contrary authority from the Federal Circuit suggesting that the same preponderance standard used overall in evaluating a claimant's success in a Vaccine Act claim is also applied specifically to the first *Althen* prong. *See, e.g.*, *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1350 (Fed. Cir. 2010) (affirming special master's determination that expert "had not provided a 'reliable medical or scientific explanation' *sufficient to prove by a preponderance of the evidence a medical theory* linking the [relevant vaccine to relevant injury].") (emphasis added). Regardless, one thing remains: petitioners always have the ultimate burden of establishing their Vaccine Act claim *overall* with preponderant evidence. *W.C. v. Sec'y of Health & Human Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013) (citations omitted); *Tarsell*, 133 Fed. Cl. at 793 (noting that *Moberly* "addresses the petitioner's overall burden of proving causation-in-fact under the Vaccine Act" by a preponderance standard).

The second *Althen* prong requires proof of a logical sequence of cause and effect, usually supported by facts derived from a petitioner's medical records. *Althen*, 418 F.3d at 1278; *Andreu*, 569 F.3d at 1375–77; *Capizzano*, 440 F.3d at 1326; *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992). In establishing that a vaccine "did cause" injury, the opinions and views of the injured party's treating physicians are entitled to some weight. *Andreu*, 569 F.3d at 1367; *Capizzano*, 440 F.3d at 1326 ("medical records and medical opinion testimony are favored

---

[4] Although decisions like *Contreras* suggest that the burden of proof required to satisfy the first *Althen* prong is less stringent than the other two, there is ample contrary authority for the more straightforward proposition that when considering the first prong, the same preponderance standard used overall is also applied when evaluating if a reliable and plausible causal theory has been established. *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1350 (Fed. Cir. 2010).

in vaccine cases, as treating physicians are likely to be in the best position to determine whether a 'logical sequence of cause and effect show[s] that the vaccination was the reason for the injury'") (quoting *Althen*, 418 F.3d at 1280). Medical records are generally viewed as particularly trustworthy evidence, since they are created contemporaneously with the treatment of the patient. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Medical records and statements of a treating physician, however, do not *per se* bind the special master to adopt the conclusions of such an individual, even if they must be considered and carefully evaluated. Section 13(b)(1) (providing that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court"); *Snyder v. Sec'y of Health & Human Servs.*, 88 Fed. Cl. 706, 746 n.67 (2009) ("there is nothing . . . that mandates that the testimony of a treating physician is sacrosanct—that it must be accepted in its entirety and cannot be rebutted"). As with expert testimony offered to establish a theory of causation, the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should be weighed against other, contrary evidence also present in the record—including conflicting opinions among such individuals. *Hibbard v. Sec'y of Health & Human Servs.*, 100 Fed. Cl. 742, 749 (2011) (not arbitrary or capricious for special master to weigh competing treating physicians' conclusions against each other), *aff'd*, 698 F.3d 1355 (Fed. Cir. 2012); *Caves v. Sec'y of Dept. of Health & Human Servs.*, No. 06-522V, 2011 WL 1935813, at *17 (Fed. Cl. Spec. Mstr. Apr. 29, 2011), *mot. for review denied*, 100 Fed. Cl. 344, 356 (2011), *aff'd without opinion*, 475 F. App'x 765 (Fed. Cir. 2012).

The third *Althen* prong requires establishing a "proximate temporal relationship" between the vaccination and the injury alleged. *Althen*, 418 F.3d at 1281. That term has been equated to the phrase "medically-acceptable temporal relationship." *Id.* A petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation." *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008). The explanation for what is a medically acceptable timeframe must align with the theory of how the relevant vaccine can cause an injury (*Althen* prong one's requirement). *Id.* at 1352; *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 542 (2011), *recons. denied after remand*, 105 Fed. Cl. 353 (2012), *aff'd mem.*, 503 F. App'x 952 (Fed. Cir. 2013); *Koehn v. Sec'y of Health & Human Servs.*, No. 11-355V, 2013 WL 3214877 (Fed. Cl. Spec. Mstr. May 30, 2013), *mot. for review denied* (Fed. Cl. Dec. 3, 2013), *aff'd*, 773 F.3d 1239 (Fed. Cir. 2014).

B.  *Standards Applicable to Significant Aggravation Claim*

In this matter, Petitioner maintains that the Tdap vaccine significantly aggravated a preexisting autoimmune encephalitis. Where a petitioner so alleges, the *Althen* test is expanded, and the petitioner has additional evidentiary burdens to satisfy. *Loving v. Sec'y of Health & Human*

*Servs.*, 86 Fed. Cl. 135, 144 (2009). In *Loving*, the Court of Federal Claims combined the *Althen* test with the test from *Whitecotton v. Sec'y of Health & Human Servs.*, 81 F.3d 1099, 1107 (Fed. Cir. 1996), which related to on-Table significant aggravation cases. The resultant "significant aggravation" test has six components, which require establishing:

> (1) the person's condition prior to administration of the vaccine, (2) the person's current condition (or the condition following the vaccination if that is also pertinent), (3) whether the person's current condition constitutes a "significant aggravation" of the person's condition prior to vaccination, (4) a medical theory causally connecting such a significantly worsened condition to the vaccination, (5) a logical sequence of cause and effect showing that the vaccination was the reason for the significant aggravation, and (6) a showing of a proximate temporal relationship between the vaccination and the significant aggravation.

*Loving*, 86 Fed. Cl. at 144; *see also W.C.*, 704 F.3d at 1357 (holding that "the *Loving* case provides the correct framework for evaluating off-table significant aggravation claims"). In effect, the last three prongs of the *Loving* test correspond to the three *Althen* prongs.

Subsumed within the *Loving* analysis is the requirement to evaluate the likely natural course of an injured party's preexisting disease, in order to determine whether the vaccine made the petitioner worse than he would have been but for the vaccination. *Locane v. Sec'y of Health & Human Servs.,* 685 F.3d 1375, 1381–82 (Fed. Cir. 2012) (upholding special master's determination that petitioner had failed to carry her burden of proof in establishing that her preexisting injury was worsened by the relevant vaccine); *Hennessey v. Sec'y of Health & Human Servs.*, No. 01-190V, 2009 WL 1709053, at *41–42 (Fed. Cl. Spec. Mstr. May 29, 2009), *mot. for review denied*, 91 Fed. Cl. 126 (2010). The critical point of examination is thus "whether the change for the worse in [petitioner's] clinical presentation was aggravation or a natural progression" of the underlying condition. *Hennessey,* 2009 WL 1709053, at *42.[5] The Federal Circuit has upheld the determinations of special masters that worsening was not demonstrated in connection with establishing a petitioner's overall preponderant burden of proof for a non-Table causation-in-fact

---

[5] The legislative history of the Vaccine Act strongly supports interpreting "significant aggravation" as requiring a claimant to establish that a vaccine rendered a preexisting condition qualitatively worse than it would have been otherwise—not simply that the affected individual experienced a post-vaccination symptom that contrasts with the individual's comparatively better pre-vaccination health. *See* H.R. Rep. No. 99-908, at 15 (1986) ("This [significant aggravation] provision does not include compensation for conditions which might legitimately be described as pre-existing (e.g., a child with monthly seizures who, after vaccination, has seizures every three and a half weeks), *but is meant to encompass serious deterioration* (e.g., a child with monthly seizures who, after vaccination, has seizures on a daily basis" (emphasis added)).

claim. *See, e.g., Snyder/Harris v. Sec'y of Health & Human Servs.*, 553 F. App'x 994, 999–1000 (Fed. Cir. 2014); *Locane*, 685 F.3d at 1381–82.[6]

## C. *Legal Governing Factual Determinations*

The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. Section 11(c)(2). The special master is required to consider "all [] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as the "results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." Section 13(b)(1)(A). The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (it is within the special master's discretion to determine whether to afford greater weight to contemporaneous medical records than to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is evidenced by a rational determination).

Medical records that are created contemporaneously with the events they describe are presumed to be accurate and "complete" (i.e., presenting all relevant information on a patient's health problems). *Cucuras*, 993 F.2d at 1528; *Doe/70 v. Sec'y of Health & Human Servs.*, 95 Fed. Cl. 598, 608 (2010) ("[g]iven the inconsistencies between petitioner's testimony and his contemporaneous medical records, the special master's decision to rely on petitioner's medical records was rational and consistent with applicable law"), *aff'd sub nom. Rickett v. Sec'y of Health & Human Servs.*, 468 F. App'x 952 (Fed. Cir. 2011) (non-precedential opinion). This presumption is based on the linked propositions that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in as accurate a manner as possible, so that they are aware of enough relevant facts to make appropriate treatment decisions. *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013); *Cucuras v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 537, 543 (1992), *aff'd*, 993 F.2d at 1525 (Fed. Cir. 1993) ("[i]t strains reason to conclude that petitioners would fail to accurately report the onset of their daughter's symptoms").

---

[6] This is consistent with the fact (well recognized by controlling precedent) that evidence of "worsening" relevant to Respondent's alternative cause burden may reasonably by evaluated by a special master in determining the success of a petitioner's prima facie showing. *Snyder/Harris*, 553 F. App'x at 1000 ("'[N]o evidence should be embargoed from the special master's consideration simply because it is also relevant to another inquiry under the statute.'" (*quoting Stone*, 676 F.3d at 1380)); *see also de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1353 (Fed. Cir. 2008) ("The government, like any defendant, is permitted to offer evidence to demonstrate the inadequacy of the petitioner's evidence on a requisite element of the petitioner's case-in-chief.").

Accordingly, if the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie*, 2005 WL 6117475, at *20. Indeed, contemporaneous medical records are generally found to be deserving of greater evidentiary weight than oral testimony—especially where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy*, 23 Cl. Ct. at 733 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("[i]t has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight.")).

There are, however, situations in which compelling oral testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733)). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be afforded. *Andreu*, 569 F.3d at 1379; *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

When witness testimony is offered to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez*, 2013 WL 1880825, at *3 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *Lalonde v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203–04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). In making a determination regarding whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at hearing, there must be evidence that this decision was the result of a rational determination. *Burns*, 3 F.3d at 417.

D.  *Resolution of Case Via Ruling on Record*

Petitioners have requested that I resolve this matter on the papers, rather than by holding a hearing. Mot. for Ruling on the Record at 1. The Vaccine Act and Rules not only contemplate but encourage special masters to decide petitions on the papers where (in the exercise of their discretion) they conclude that doing so will properly and fairly resolve the case. Section

12(d)(2)(D); Vaccine Rule 8(d). The decision to rule on the record in lieu of hearing has been affirmed on appeal. *See Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2016 WL 3456435, at \*21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided on the papers in lieu of hearing and that decision was upheld). I am not required to hold a hearing in every matter, no matter the preferences of the parties. *Hovey v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 397, 402–03 (1997) (special master acted within his discretion in denying evidentiary hearing); *Burns*, 3 F.3d at 417; *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 71500, at \*2 (Cl. Ct. Spec. Mstr. Apr. 19, 1991).

## ANALYSIS

### I.     The Evidence is Insufficient to Preponderantly Satisfy *Althen* Prong I

Though Petitioners temporally associate J.N.H.'s symptoms with the Tdap vaccine he received in June 2016, they have not provided any reliable or persuasive evidence to establish a *causal* relationship between the vaccination and the symptoms he later experienced.[7] Petitioners have not engaged expert witnesses, and they have not submitted any medical or scientific literature for consideration. While Petitioners have submitted a one-paragraph written opinion from Dr. Nicole Shorrock, M.D.—one of J.N.H.'s treating physicians—Dr. Shorrock fails to discuss biological processes by which the Tdap vaccine could cause and/or exacerbate autoimmune encephalitis. *See* Opinion Letter of Nicole Shorrock, M.D., filed as Ex. 5 on July 16, 2019 (ECF No. 7-5).

Without expert reports, medical literature, or epidemiological studies, Petitioners rely solely on the temporal relationship between J.N.H.'s vaccination and the onset of his symptoms. Such evidence has consistently been found unpersuasive in establishing causation. *Blackburn v. Sec'y of Health & Human Servs.*, No. 10-410V, 2015 WL 425935, at \*31 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) (noting that a "temporal association between vaccination and illness does not establish causation") (citation omitted). Therefore, I find that Petitioners have not preponderantly established a reputable medical theory explaining how the Tdap vaccine could cause autoimmune encephalitis.

---

[7] Because Petitioners' claim fails on the first *Althen* prong, I do not include an extended discussion of the second and third—since absent a reliable and persuasive theory of causation, satisfaction of these prongs (which require petitioners to establish a logical sequence of cause and effect, as well as a medically acceptable timeframe) are insufficient bases for an entitlement award. *See Zumwalt v. Sec'y of Health & Human Servs.*, No. 16-994V, 2019 WL 1953739, at \*16 n.21 (Fed. Cl. Spec. Mstr. Mar. 21, 2019), *mot. for review denied, Zumwalt v. Sec'y of Health & Human Servs.*, ___ Fed. Cl. ___, slip op. (2019); *Hibbard v. Sec'y of Health & Human Servs.*, 698 F.3d 1355, 1364–65 (Fed. Cir. 2012). But Petitioner did not succeed in satisfying these prongs either. Petitioners allege that J.N.H. experienced symptoms of an autoimmune encephalitis within hours of receiving the vaccine, when he first developed a fever. Pet. at 6.  And although Petitioners allege that J.N.H. developed a fever the same day he received the vaccine, and thereafter began experiencing behavioral and mental deterioration, they have offered no evidence to explain *why* such a timeframe is medically acceptable.

## II.     Petitioners Have Not Established Their Significant Aggravation Claim with Sufficient Preponderant Evidence

For many of the same reasons articulated above, Petitioners also failed to supply preponderant evidence that the Tdap vaccine J.N.H. received in June 2016 significantly aggravated a preexisting autoimmune encephalopathy. While the medical records submitted in this case do at times reflect an encephalopathic event, specifically PANDAS, the record does not establish a causal relationship between the Tdap vaccine and the rapid deterioration J.N.H. experienced thereafter. *See* Ex. 6 at 815, 819. Even after a holistic review of J.N.H.'s medical history, Dr. Shorrock counseled Petitioners on the importance of vaccination, though they declined to continue vaccinating J.N.H. due to their belief that the Tdap vaccine played a causal role in their son's condition. *Id.* at 826. It was only after learning of Petitioners' pending claim that Dr. Shorrock attributed J.N.H.'s condition to vaccine-induced aggravation of his preexisting PANDAS. *Id.*; Ex. 5.

While I consider Dr. Shorrock's opinion to have some evidentiary value, it is minimized by her having prepared the letter for pending litigation. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 n.6 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical records were more persuasive than letters submitted for litigation purposes), *aff'd*, 127 Fed. Cl. 299, 303 (2014); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1346–49 (Fed. Cir. 2010) (affirming the special master's holding in which he found a discharge summary more persuasive than post-hospitalization notes, where the doctor who wrote the discharge summary "was able to consider all of [petitioner's] medical records" and the doctors who wrote the post-hospitalization notes "did not provide any reasoning for their statements").

After careful review of the record in this matter, I find that Petitioners' reliance on Dr. Shorrock's post-hospitalization opinion is insufficient to preponderantly establish a causal relationship between the Tdap vaccine J.N.H. received and the aggravation of an alleged preexisting autoimmune encephalitis (which I note was not preponderantly established either). Thus, I find Petitioners' are not entitled to a compensation award.

### CONCLUSION

The Vaccine Act permits me to award compensation to petitioners alleging a "non-Table Injury" only if they can show by medical records or competent medical opinion that the injury was more likely that not vaccine-caused. Here, Petitioners' claim depends on my finding that J.N.H. experienced post-vaccination onset of autoimmune encephalitis, but the weight of the evidence does not support that conclusion. Thus, there is insufficient evidence to support an award of compensation, leaving me no choice but to hereby **DENY** this claim.

In the absence of a timely-filed motion for review (see Appendix B to the Rules of Court), the Clerk shall enter judgment in accord with this decision. [8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.