# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-749V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | | Chief Special Master Corcoran |
| J.N.H., * | | |
| *by his parents*, * | | |
| JOHN HEATH and MARIE * | | |
| LOUISE HEATH, * | | |
| * | | |
| Petitioner, * | | Filed: November 16, 2020 |
| * | | |
| v. * | | |
| * | | Autism Spectrum Disorder; Attorney's |
| SECRETARY OF HEALTH * | | Fees and Costs; Objective Evidence; |
| AND HUMAN SERVICES, * | | Reasonable Basis |
| * | | |
| Respondent. * | | |
| * | | |
| * * * * * * * * * * * * * * * * * * * | | |

*Michael Avrim Firestone*, Marvin Firestone, MD, JD and Associates, San Mateo, CA, for Petitioner.

*Heather Lynn Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION DENYING ATTORNEY'S FEES AND COSTS[1]

On May 21, 2019, John and Marie Louise Heath filed a petition on behalf of their minor son, J.N.H., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] (ECF No. 1) ("Pet."). They alleged that the Tdap (Adacel) vaccine J.N.H.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

received on June 1, 2016 caused autoimmune encephalitis which led to a permanent neurological disability, or alternatively that it caused a significant aggravation of a preexisting autoimmune disorder, autoimmune encephalitis, which later resulted in permanent neurological disability. Pet. at 11. The case was dismissed last winter.

Petitioners have now filed a fees application, requesting a total of $10,820.65 in fees and costs for work performed from May 29, 2019, to September 18, 2020. Petitioner's Application, filed on Sept. 20, 2020 (ECF No. 24) ("Fees App."). Respondent reacted and opposed Petitioner's application. Respondent's Opposition, filed on October 5, 2020 (ECF No. 25). Respondent asserts that Petitioners have "failed to establish a reasonable basis for" their claim. *Id.* at 1. Petitioners did not file a reply.

For the following reasons I **DENY** Petitioners' motion for fees and costs, because I find that their claim lacked reasonable basis from its inception.

I.  **Procedural/Factual Background**

At the time of his June 2016 receipt of a Tdap booster, J.N.H. was a 13-year-old with a history significant for multiple conditions including, autism spectrum disorder, anxiety, attention deficit disorder, and obsessive-compulsive disorder ("OCD"). *See* Ex. 4 at 1-3; Ex. 6 at 205. Four months later (with no intervening medical record evidence of any reaction or health problems that temporally could be related to vaccination), in October 2016 J.N.H. was seen for complaints of "tiredness and not feeling well". Ex. 4 at 4. According to the record, this was "the same complaint as last visit." *Id.* J.N.H. returned to the doctor's office on October 17, 2016 complaining of sore throat. *Id.* at 8. The record reflects that J.N.H.'s father "was concerned about PANDAS,"[3] although testing for strep was negative. In November 2016, J.N.H's parents reported to treaters that his behavior had gotten "exponentially worse" since his grandmother passed away earlier that month. *Id.* at 9-13. Counseling and dietary changes were recommended. *Id.*

In January of 2017, J.N.H. presented to a new primary care physician who was told that J.N.H. had experienced an abrupt onset of neuropsychiatric symptoms one year earlier, right after a strep throat infection (although if so this would predate the vaccinations at issue). Ex. 14 at 14. The record from this visit noted a history of autism and social difficulties, but that J.N.H. had been doing well until the onset of his more recent symptoms, which included severe anxiety and OCD. *Id.* at 15-18.

J.N.H.'s condition continued to decline over the next two years, which were filled with multiple inpatient psychiatric hospitalizations, as well as emergency room visits. *See generally* Ex. 6. In April 2019, J.N.H. was seen for a flare in his behavior over the past two months. *Id.* at 826. Although he was due to receive some vaccines, Petitioners refused based on concerns of the Tdap

---

[3] "PANDAS" stands for Pediatric Autoimmune Neuropsychiatric Disorder Associated with Streptococcus infections.

2

vaccine having caused a vaccine injury, and the record of this visit records their intent at the time to pursue a vaccine injury claim. *Id.* at 822, 826. On May 13, 2019, the treater in question wrote a letter "To Whom it May Concern," stating that it was highly likely in his view that the Tdap vaccine administered in June 2016 caused J.N.H's neurological illness and decline. Ex. 5 at 1.

Because the vaccine in question was received in June 2016, Petitioners' claim needed to be filed sometime in the summer of 2019 (depending on the alleged onset) to be timely under the Act's 36-month limitations period. Section 16(a)(2). And indeed, the Petition expressly stated that the matter was being filed expeditiously, in order to preserve the statute of limitations. Pet. at 1. Once counsel had the opportunity to obtain and review medical records and additional information, an amended petition was to be filed. *Id.* at 1-2.

Petitioners filed some medical records in the two months following the case's initiation, and then a status conference was held on July 17, 2019. At that time, I expressed immediate concerns regarding the claim's overall reasonable basis, in light of the documented medical record and based on my experience adjudicating highly-similar claims (and indeed - I scheduled the conference as soon after filing of the Petition as possible, since the deficiencies in the claim jumped out from my initial review). *See* Order, July 17, 2019 (ECF No. 8). In particular, I noted that Petitioner's theory (that J.N.H. suffered a severe encephalopathic reaction immediately following receipt of the Tdap vaccine) lacked contemporary, corroborative record evidence. *Id.* at 1-2. I also noted that it was very unlikely that Petitioners could prevail on a theory alleging a significant aggravation of either J.N.H's autism spectrum disorder (which the records clearly indicated he had been diagnosed with) or any other purported injury. *Id.*

On December 10, 2019—barely six months post-filing—Petitioners moved to withdraw the petition pursuant to Vaccine Rule 21(b). This pleading was stricken, however, and on January 10, 2020, Petitioners filed a Motion for Ruling on the Record. Motion, filed on Jan. 10, 2020 (ECF No. 16). Respondent reacted to Petitioner's motion in a Response filed on February 12, 2020, asserting that Petitioners failed to substantiate their claim and therefore are not entitled to compensation. Response, filed Feb. 12, 2020 (ECF No. 19). On February 19, 2020, I issued a decision denying entitlement in this matter. Decision, filed Feb. 19, 2020 (ECF No. 20).

## II. Analysis

### A. Reasonable Basis Standard

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the

3

claim's reasonable basis through some objective evidentiary showing. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *see also Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 77 (Fed. Cl. 2019).[4]

The Federal Circuit recently clarified the standards used to evaluate whether a claim has reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020). Although the "totality of the circumstances" in which a claim is filed is still a reasonable framework, ultimately *objective proof* supporting the claim is required to establish reasonable basis. *Cottingham,* 971 F.3d at 1344-45. Under that totality analysis, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim" when considering whether objective proof exists in support of the claim. *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 574 (2017).

Reasonable basis—or the lack thereof—has been discussed in claims involving autism spectrum disorders ("ASDs"). The Omnibus Autism Proceedings ("OAP"), which concluded in 2010, consistently determined that there was no persuasive evidence that the MMR vaccine or thimerosal-containing vaccines caused autism.[5] Since then, cases bringing similar claims have been uniformly rejected, and thus "Vaccine Act counsel [have been] put on notice" that if counsel pursue, to a decision, theories linking vaccines causally to ASD, and their evidence proves to be highly unpersuasive," then special masters will find that the claim was brought without reasonable basis. *See*, e.g., *Sturdivant v. Sec'y of Health & Human Servs.*, No. 07-788V, 2016 WL 552529, at *20 (Fed. Cl. Spec. Mstr. Jan. 21, 2016) (footnote omitted) (discussing the history of autism cases in the Vaccine Program and how those cases have consistently fallen "*far short* of plausibility" since the OAP concluded (emphasis in original)); *Hardy v. Sec'y of Health & Human Servs.*, No. 08–108V, 2015 WL 7732603, at *33–35 (Fed. Cl. Spec. Mstr. Nov. 3, 2015); *Long v. Sec'y of Health & Human Servs.*, No. 08–792V, 2015 WL 11011740, at *19–20 (Fed. Cl. Spec. Mstr. Feb. 9, 2015). I myself have noted that counsel in vaccine injury cases run the risk of nonpayment for bringing a claim relying, in whole or part, on autism-related symptoms as an injury. *A.S. by Sterling*

---

[4] There is also a good faith requirement that must be satisfied to obtain a fees award in an unsuccessful case, but here I find that Petitioners proceeded with the matter in a good faith belief that their claim had merit.

[5] The Court of Federal Claims has also made it clear that petitioners cannot successfully recast a claim that a vaccine caused autism into an encephalopathy claim, based on the logic that the neurologic symptoms associated with an ASD reflect an underlying brain injury. *See, e.g.*, *Cunningham v. Sec'y of Health & Human Servs.*, No. 13–483V, 2017 WL 1174448, at *5 (Fed. Cl. Jan. 25, 2017).

4

*v. Sec. of Health & Human Servs.*, No. 16-551V, 2020 WL 549443, at *5 (Fed. Cl. Spec. Mstr. Jan. 3, 2020) (denying attorney's fees and costs for alleged vaccine-caused autism injury).

**B.     This Claim Lacked Reasonable Basis from the Date of Filing**

Because Petitioners were literally unsuccessful in bringing their claim, they must demonstrate that the claim had reasonable basis if they are to be awarded attorney's fees and costs. I find that the claim lacked reasonable basis from its inception—and Petitioners have not referenced evidence establishing the contrary.

First, there is a total lack of evidence in the record establishing in any regard that J.N.H. experienced a post-vaccination reaction that could be deemed to rise to the level of a severe brain injury consistent with what the Petition alleges. Petitioners alleged that J.N.H. experienced symptoms of an autoimmune encephalitis within hours of receiving the vaccine, when he purportedly developed a fever within 24 hours of administration (Pet. at 6). But the record not only does not permit a preponderant finding in that regard—it does not corroborate the allegation *at all*, and instead better supports the conclusion that J.N.H. displayed no immediate, close-in-time reaction. Certainly J.N.H. was not hospitalized or treated in the immediate weeks and months post-vaccination. Petitioners' reliance on a non-contemporaneous treater opinion letter, prepared for pending litigation and unsupported by the medical records, can be afforded minimal weight at best. *See* Opinion Letter, filed as Ex. 5 on July 16, 20219 (ECF No. 7-50) at 1. Petitioners otherwise temporally associate J.N.H.'s subsequent symptoms (which do not appear to have manifested until several months post-vaccination) with the Tdap vaccine he received in June 2016, but it is axiomatic in the Program that a mere temporal relationship is never sufficient to obtain entitlement. *See Grant v. Sec. of Health & Human Servs.*, 956 F,2d 1144 (Fed. Cl. 1992) (holding that "a proximate temporal associate alone does not suffice to show a causal link between the vaccination and the injury").

There is also no record evidence of an encephalopathy diagnosis or anything that would suggest such a diagnosis could have been appropriate. In rare cases petitioners have succeeded in establishing a vaccine-caused encephalopathy that produced developmental regression or ASD-like symptoms. But this occurred solely in the context of Table claims (where claimants are held to exacting factual showings if causation is to be presumed), and the facts in such unique cases underscore the importance of evidence of acute and/or immediate encephalopathy precipitated by a close-in-time vaccination. *See,* e.g., *Wright v. Sec'y of Health & Human Servs.*, No. 12-423V, 2015 WL 6665600, at *10 (Fed. Cl. Spec. Mstr. Sept. 21, 2015) (finding that a child with developmental regression symptoms experienced a Table encephalopathy, where child convulsed and vomited during car ride home after receiving vaccinations (possibly evincing a brief seizure), then became listless, unresponsive, and "basically catatonic" by the following day); *Bast v. Sec'y of Health & Human Servs.*, No. 01-565V, 2012 WL 6858040, at *35–36 (Fed. Cl. Spec. Mstr. Dec. 20, 2012) (discussing case report involving a successful Vaccine Program claimant who alleged a

5

Table encephalopathy claim for her autism-type symptoms; child had developed a high fever, inconsolable crying, irritability, and lethargy, and refusal to walk within forty-eight hours after vaccination), *mot. for review den'd,* 117 Fed. Cl. 104 (2014), *aff'd,* 579 F. App'x 1001 (Fed. Cir. 2014). This case does not establish Table liability (and does not in fact attempt to do so).

Second, Petitioners have pursued a kind of claim (here, relying on exacerbation of autism symptoms) that has been repeatedly, unsuccessfully interposed in the Program. As noted, even after the OAP determined that specific, more narrow causation theory involving ASD as a vaccine injury had failed, numerous other claims, seeking to set themselves apart from the causation theories in the OAP, experienced the same result. *See,* e.g., *Rogero v. Sec'y of Health & Human Servs.*, No. 11-770V, 2017 WL 4277580, at *4–5 (Fed. Cl. Spec. Mstr. Sept. 1, 2017) (citing eighteen unsuccessful post-OAP autism claims that went to hearing, and thirteen post-OAP autism claims that were rejected without a hearing), *mot. for review denied*, slip op. (Fed. Cl. Jan. 11, 2018), *aff'd*, 748 F. App'x 996 (Fed. Cir. 2018). Since then, special masters (including me) have reasonably questioned whether such autism injury claims could still be brought with reasonable basis. *See,* e.g., *Hashi v. Sec'y of Health & Human Servs.*, No. 08-307V, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016); *Sturdivant*, 2016 WL 552529, at *20. This evolved into explicit warnings—that such claims would lack reasonable basis unless they could be set apart from previously decided claims by persuasive evidence. *Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2017 WL 3033940, at *7–8, 22 (Fed. Cl. Spec. Mstr. Apr. 11, 2017).

Given this context, it was critical for counsel to carefully evaluate the objective factual basis for the claim prior to its filing. But this did not occur—and counsel in question is an experienced Vaccine Program bar member, having practiced in the Program for many years. *See* Fees App. at 3. While counsel may not have had a great deal of time to perform such due diligence, the burden of doing so falls on counsel—and more importantly, the Federal Circuit has explicitly ruled that a looming limitations cut-off *does not constitute objective support for a claim*, eliminating it as a factor that can justify the filing of a claim that otherwise lacks reasonable basis. *Simmons*, 875 F.3d at 636. The explicit deficiencies in this kind of petition were, or should have been, known to Petitioners and their counsel *at the time the claim was filed*.

I am reluctant to deny fees in any Vaccine Act claim in their entirety, and in most cases endeavor to find some basis for at least a partial fees award. *See, e.g., Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2016 WL 4272069, at *3 (Fed. Cl. Spec. Mstr. June 22, 2016) (awarding partial attorney's fees; claim had reasonable basis upon filing, but lost it after a certain date), *aff'd in part*, 130 Fed. Cl. 1, 8 (Fed. Cl. 2017) (affirming findings with respect to reasonable basis). It is especially hard to do so when dealing with attorneys who regularly provide competent service to their clients in the Vaccine Program. But the nature of this claim, in conjunction with the matter's procedural history, do not support such lenience here. This claim should not have been filed.

6

## CONCLUSION

Based on my review of the factual and procedural history I conclude that this claim was unsupported by objective factual basis or medical support. Further, Petitioners were on notice of deficiencies in their case early on, but proceeded regardless. As a result, Petitioners never had a reasonable basis for their claim, and their motion for attorney's fees and costs is DENIED.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
